## Amended and Restated Bitcoin Services Agreement

This Amended and Restated Bitcoin Services Agreement ("**Agreement**") is entered into as of August 14, 2013 by and among CLI Holdings Inc., with its principal place of business at 900 WINSLOW WAY EAST, SUITE 100, BAINBRIDGE ISLAND, WA 98110 ("**CLI Holdings**"), CoinLab Inc., with its principal place of business at 900 WINSLOW WAY EAST, SUITE 100, BAINBRIDGE ISLAND, WA 98110 ("**CoinLab Inc.**"), and Alydian Inc. ("**Alydian**" and collectively with CLI Holdings, CoinLab Inc. and Vessenes, and each of their respective affiliates, "**CoinLab**"), and Dalsa Barbour LLC, with its principal place of business at 315 West 36th Street #18B New York, NY 10018 ("**Customer**").

### RECITALS

Whereas, CoinLab Inc. and Customer are parties to that certain Bitcoin Services Agreement dated as of December 13, 2012 (the "**First Services Agreement**").

Whereas, CLI Holdings and Customer are parties to that certain Bitcoin Services Agreement dated as of March 8, 2013 (the "**Second Services Agreement**" and together with the First Services Agreement, each a "**Services Agreement**" and together the "**Services Agreements**").

Whereas, Vessenes, or one or more of his affiliates, is an equity holder of CLI Holdings, CoinLab Inc., and Alydian, and will benefit from this Agreement and the Services Agreement.

Whereas, Customer anticipates acting as an agent for Crystal Island, LLC (together with its affiliates, including without limitation Cedar Hill Capital, Emil Woods and Chad Cascarilla "**Crystal Island**") by providing diligence services for Crystal Island in connection with a potential transaction between Crystal Island and CoinLab (the "**Diligence Services**").

Whereas, in order to eliminate any and all potential conflicts of interest of Customer in its performance of the Diligence Services, the parties hereto desire to amend and restate each of the Services Agreements on the terms and conditions set forth herein, and for this Agreement to supersede each of the Services Agreements in its entirety, including without limitation by: (a) CoinLab releasing Customer from any confidentiality obligations imposed by the Services Agreements and (b) CoinLab agreeing to dedicate 100% of its mining output (other than mining output that is required to satisfy CoinLab's obligations to Crystal Island and mining output that is required to meet CoinLab's appropriate mining operating expenses and capital expenditures subject as approved by all parties) from the date of this Agreement to producing Bitcoin for Dalsa Barbour until such time as Dalsa Barbour receives 7,984.006735 Bitcoins from CoinLab pursuant to this Agreement.

Whereas, CoinLab acknowledges that without the agreements set forth in the preceding Recital, a conflict of interest inherently arises between Crystal Island and Customer because Customer would be put in a position of advocating on behalf of CoinLab to enter into a financing

1

transaction with Crystal Island regardless of the outcome of the Diligence Services, and CoinLab and Customer acknowledge that such a conflict of interest must be prevented.

NOW, THEREFORE, in consideration of the mutual promises made herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby amend and restate each of the Services Agreements in its entirety and further agree as follows:

1. **Definitions.**

    a. **"Bitcoin"** means the same-named, de-centralized, digital artifacts regulated by peer-to-peer networks and earned through an exchange for especially valuable numbers acquired through computing power and verified by nodes on the peer-to-peer network.

    b. **"CoinLab Storage"** means the online storage system developed and hosted by or for CoinLab.

    c. **"Confidential Information"** means non-public information, technical data or know-how of a party and/or its affiliates, which is furnished to the other party, whether in tangible or intangible form, in connection with this Agreement that would reasonably be deemed confidential in light of the nature of the information or the circumstances of its disclosure. "Confidential Information" includes the terms and conditions of this Agreement.

    d. **"Fees"** has the definition set forth in Section 3.

    e. **"Mined Bitcoins"** means Bitcoins mined by CoinLab for Customer pursuant to the terms and conditions of this Agreement.

    f. **"Services"** means the services that CoinLab provides to Customer under this Agreement as further described in Section 2.

    g. **"Term"** means the period of time necessary for CoinLab to deliver all Bitcoins to Customer under this Agreement.

    h. **"Wind Down Period"** means the period of time extending 12 months after the Term of the Agreement.

2. **Services.** CoinLab will use best efforts to mine 7,984.006735 Bitcoins on Customer's behalf, which, for the avoidance of doubt, will mean that CoinLab shall dedicate 100% of its mining output (other than mining output that is required to satisfy CoinLab's obligations to Crystal Island and mining output that is required to meet CoinLab's appropriate mining operating expenses and capital expenditures subject as approved by all parties) from the date of this Agreement to producing Bitcoin for Dalsa Barbour until such time as Dalsa Barbour receives 7,984.006735 Bitcoins from CoinLab pursuant to this Agreement. On a weekly basis, CoinLab will promptly deliver to Customer the Bitcoins ordered as they are mined by CoinLab. CoinLab will deliver to Customer a

2

weekly account of Mined Bitcoins compared with Bitcoins delivered to Customer. CoinLab will deliver to Customer Mined Bitcoins via the CoinLab Storage or other methods of delivery requested by Customer. Customer may retain Mined Bitcoins in the CoinLab Storage through the Wind Down Period. Customer may perform one or more audits, at CoinLab's expense, of CoinLab's Bitcoin output to confirm that Customer is receiving the mining output as agreed in section 2.

3. **Fees.** In exchange for performing the Services, Customer has paid CoinLab a total of $75,000.00 USD (**"Fees"**). Each party will bear its own taxes as levied under applicable law.

4. **Termination.** Customer may suspend its performance or terminate this Agreement:

    a. If CoinLab materially breaches this Agreement and fails to cure that breach within 30 days after receiving notice;

    b. Immediately upon notice if CoinLab is Insolvent. **"*Insolvent*"** means: (i) becoming insolvent; (ii) admitting in writing the inability to pay debts as they mature; making a general assignment for the benefit of creditors; (iii) suffering or permitting the appointment of a trustee or receiver for all or any assets (unless such appointment is vacated or dismissed within 60 days after appointment); (iv) filing (or having filed) any petition as a debtor under any provision of the federal Bankruptcy Code or any state law relating to insolvency, unless such petition and all related proceedings are dismissed within 60 days of such filing; being adjudicated insolvent or bankrupt; (v) having wound up or liquidated; or (vi) ceasing to carry on business.

5. **Effects of Termination or Expiration.** Upon expiration or termination of the Agreement, sections that were, by their nature, intended to survive will so survive. Customer will collect all of its Mined Bitcoins from the CoinLab storage by the end of the Wind Down Period; if it fails to do so, all rights in and to such Mined Bitcoins will and does revert to CoinLab. In the event that the Agreement expires or terminates before all Mined Bitcoins ordered by Customer have been delivered to Customer, at Customer's option, CoinLab will promptly refund all Fees to Customer.

6. **Confidentiality.** CoinLab will not use Customer's Confidential Information except as reasonably required for the performance of this Agreement. CoinLab will hold in confidence Customer's Confidential Information by means that are no less restrictive than those used for its own similar confidential materials and in no case less than reasonable care. CoinLab agrees not to disclose Customer's Confidential Information to anyone other than its employees or subcontractors who are bound by confidentiality obligations and who need to know the same to perform such party's obligations hereunder or who need to know the same for purposes of internal business administration such as the provision of legal or accounting services.

7. **Warranties.** CoinLab warrants that the Services will be performed consistently with industry standards for Bitcoin mining or manufacture. Customer warrants that it will not

3

Case 13-19746-KAO    Doc 13-6    Filed 11/15/13    Ent. 11/15/13 16:41:58    Pg. 3 of 11    Vessenes Decl, Ex. F, pg. 3

exchange Bitcoins for any illegal material, illegal services, or contraband under any applicable laws. Customer also warrants that it will be responsible for all necessary government approvals and taxes with regard to the exchange of Bitcoins. Customer will indemnify, defend, and hold harmless CoinLab from any allegation, claim, or litigation proceeding (including all associated costs and attorneys' fees) arising from Customer's breach of this Section, and this indemnity obligation will survive termination or expiration of the Agreement.

8. **CoinLab Representations.** CoinLab represents and warrants that (a) all action required to be taken by CoinLab's respective directors, shareholders, managers and members in order to authorize CoinLab to enter into this Agreement has been taken, (b) CoinLab is not in violation of any term of its organizational documents, or, to CoinLab's knowledge, in any material respect of any term or provision of any mortgage, indebtedness, indenture, contract, agreement, instrument, judgment, order or decree to which it is party or by which it is bound, (c) CoinLab is not in violation of any material federal or state statute, rule or regulation applicable to CoinLab, (d) the execution and delivery of this Agreement by CoinLab and the performance by CoinLab of its obligations pursuant to this Agreement will not violate, or conflict with, or constitute a default under, any contract, agreement, instrument, judgment, order or decree to which it is party or by which CoinLab is bound, nor, to CoinLab's knowledge, result in the creation of any material mortgage, pledge, lien, encumbrance or charge upon any of the properties or assets of CoinLab, and (e) CoinLab has made available to Customer all material information reasonably available to CoinLab and no information provided to Customer contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein or therein not misleading in light of the circumstances under which they were made.

9. **Indemnification.** CoinLab hereby agrees to indemnify and hold harmless Customer and each member, partner, principal, manager, director, officer, advisor or employee thereof (each, an "**Indemnified Party**") from and against any and all loss, damage or liability due to or arising out of any inaccuracy or breach of any representation or warranty of CoinLab or failure of CoinLab to comply with any covenant or agreement set forth herein. CoinLab shall reimburse each Indemnified Party for its legal and other expenses (including the cost of any investigation and preparation) as they are incurred in connection with any such claim, action, proceeding or investigation. The reimbursement and indemnification obligations of the Investor under this Section shall survive the termination of this Agreement and shall be in addition to any liability which CoinLab may otherwise have, and shall be binding and inure to the benefit of any successors, assigns, heirs, estates, executors, administrators and personal representatives of each Indemnified Party.

10. **Disclaimer of Warranties.** EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, COINLAB DISCLAIMS ALL WARRANTIES, EXPRESS AND IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER UNDERSTANDS AND AGREES THAT THE SERVICES AND BITCOINS ARE THE RESULT OF RELATIVELY NEW TECHNOLOGIES AND MARKET EXCHANGES AND MAY BE SUBJECT TO FUTURE LAWS, REGULATIONS, CHANGES IN TECHNOLOGY, AND OTHER FORCES, NOT WITHIN COINLAB'S CONTROL, AND THAT ANY

SUCH CHANGES COULD RENDER THIS AGREEMENT IMPRACTICABLE OR IMPOSSIBLE TO PERFORM. COINLAB MAKES NO WARRANTIES REGARDING THE MONETARY VALUE OR FUTURE EXCHANGE RATES OF BITCOINS. COINLAB MAKES NO WARRANTIES REGARDING THE ABILITY OF PEER-TO-PEER NETWORKS OR OTHER TECHNOLOGIES TO ISSUE BITCOINS OR TO REGULATE, OR OTHERWISE MANAGE THE BITCOIN MARKET. EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT ALL ASSOCIATED RISKS RESIDE WITH CUSTOMER.

11. **Miscellaneous.**

    a. **Assignment.** This Agreement may not be assigned by either party without the prior written approval of the other party. Any purported assignment in violation of this Section will be void.

    b. **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed entirely within such State. The parties hereto irrevocably and unconditionally agree that any suit or proceeding arising out of or relating to this Agreement and the transactions contemplated hereby will be tried exclusively in the U.S. District Court for the Southern District of New York or, if that court does not have subject matter jurisdiction, in any state court located in The City and County of New York. The parties consent to personal and subject matter jurisdiction in the State of New York.

    c. **Remedies Upon Breach.** CoinLab agrees that any breach, or threatened breach, of this Agreement by CoinLab could cause irreparable damage to Customer and that in the event of such breach Customer shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent the violation of any obligations under this Agreement, without the necessity of proving irreparable damage or posting a bond.

    d. **Force Majeure.** Neither party will be deemed in default of this Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, accident, act of government, shortages of materials or supplies, internet outages or other cause beyond the control of such party ("**Force Majeure**") provided that such party makes best efforts to promptly notify the other. In the event of such Force Majeure, the time for performance or cure will be extended for a period equal to the duration of the Force Majeure.

    e. **Relationship of parties**. The parties are independent contractors and have no authority to act on behalf of or bind the other. This Agreement does not create an employment, agency, or partnership relationship or grant a franchise.

    f. **Entire Agreement.** This Agreement states the entire agreement between the parties on the subject and supersedes all prior negotiations, understandings, and agreements between the parties concerning the subject matter, including

without limitation each of the Services Agreements. No amendment or modification of this Agreement will be made except by a writing signed by both parties. This Agreement is effective and survives regardless of whether a transaction is consummated between Crystal Island and CoinLab.

g. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original and all of which together will constitute one instrument.

h. **Recitals.** The recitals hereof are hereby incorporated into this Agreement by this reference.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the parties hereto have caused this Amended and Restated Bitcoin Services Agreement to be signed as of the date first above written.

**CUSTOMER**

Dalsa Barbour LLC

By: *(signature)*
Name: Daniel H. Gallancy
Its: Member

**COINLAB INC.**

CoinLab Inc.

By: *(signature)*
Name: Peter Vessenes
Its: CEO

**CLI HOLDINGS**

CLI Holdings Inc.

By: *(signature)*
Name: Peter Vessenes
Its: Chairman

**ALYDIAN**

Alydian Inc.

By: *(signature)*
Name: Peter Vessenes
Its: Chairman

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Agreement") is made as of August 14, 2013, between Daniel H. Gallancy ("Assignor"), and Dalsa Barbour LLC, a New York limited liability company ("Assignee").

### *Recitals*

A. Assignor is a party to that certain Bitcoin Services Agreement, dated as of December 13, 2012 between Assignor and CLI Holdings Inc. (the "Services Agreement").

B. Assignor desires to assign, and Assignor desires to assume, all of Assignor's rights and responsibilities pursuant to the Services Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Assignor hereby sells, transfers, conveys, assigns and delivers to Assignee all of Assignor's privileges, right, title, interest and obligations under the Services Agreement.

2. Assignee hereby assumes all of the obligations of Assignor from and after the date of this Agreement under the Services Agreement.

3. Except as otherwise set forth in this Agreement, Assignee is not assuming any further liability or obligation of Assignor.

4. This Agreement will not affect Assignee's right to assert any defense with respect to the Services Agreement, at law, in equity or otherwise, against the validity or enforceability of any liability or obligation with respect to the Services Agreement.

5. This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and assigns.

6. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

[Signatures on following page]

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption Agreement to be duly executed as of the date first written above.

**ASSIGNOR:**

*/s/ Daniel H. Gallancy*

Daniel H. Gallancy

**ASSIGNEE:**

Dalsa Barbour LLC

By: */s/ Daniel H. Gallancy*
Name: Daniel H. Gallancy
Its: Member

ACKNOWLEDGED AND AGREED:

CoinLab Inc.

By: */s/*
Name: Peter Vessenes
Its: CEO

2

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Agreement") is made as of August 14, 2013, between Daniel H. Gallancy ("Assignor"), and Dalsa Barbour LLC, a New York limited liability company ("Assignee").

### *Recitals*

A. Assignor is a party to that certain Bitcoin Services Agreement, dated as of March 8, 2013 between Assignor and CoinLab Inc. (the "Services Agreement").

B. Assignor desires to assign, and Assignor desires to assume, all of Assignor's rights and responsibilities pursuant to the Services Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Assignor hereby sells, transfers, conveys, assigns and delivers to Assignee all of Assignor's privileges, right, title, interest and obligations under the Services Agreement.

2. Assignee hereby assumes all of the obligations of Assignor from and after the date of this Agreement under the Services Agreement.

3. Except as otherwise set forth in this Agreement, Assignee is not assuming any further liability or obligation of Assignor.

4. This Agreement will not affect Assignee's right to assert any defense with respect to the Services Agreement, at law, in equity or otherwise, against the validity or enforceability of any liability or obligation with respect to the Services Agreement.

5. This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and assigns.

6. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

[Signatures on following page]

IN WITNESS WHEREOF, the parties have caused this Assignment and Assumption Agreement to be duly executed as of the date first written above.

**ASSIGNOR:**

*/s/ Daniel H. Gallancy*

Daniel H. Gallancy

**ASSIGNEE:**

Dalsa Barbour LLC

By: */s/ Daniel H. Gallancy*
Name: Daniel H. Gallancy
Its: Member

ACKNOWLEDGED AND AGREED:

CLI Holdings Inc.

By: _____
Name: Peter Vessenes
Its: Chairman

2