## Bitcoin Services Agreement

This Bitcoin Services Agreement ("**Agreement**") is entered into as of the last signature below by and between CLI Holdings Inc., with its principal place of business at 71 Columbia St, Suite 300, Seattle, WA 98104 ("**CoinLab**") and _____Timothy Draper Living Trust_____ with its principal place of business or residence at _____ ("**Customer**"). For good and valuable consideration the parties agree to the terms and conditions of this Agreement.

1. **Definitions.**

    a. "**Bitcoin**" means the same-named, de-centralized, digital artifacts regulated by peer-to-peer networks and earned through an exchange for especially valuable numbers acquired through computing power and verified by nodes on the peer-to-peer network.

    b. "**CoinLab Storage**" means the online storage system developed and hosted by or for CoinLab.

    c. "**Confidential Information**" means non-public information, technical data or know-how of a party and/or its affiliates, which is furnished to the other party, whether in tangible or intangible form, in connection with this Agreement that would reasonably be deemed confidential in light of the nature of the information or the circumstances of its disclosure. "Confidential Information" includes the terms and conditions of this Agreement.

    d. "**Fees**" has the definition set forth in Section 3.

    e. "**Mined Bitcoins**" means Bitcoins mined by CoinLab for Customer pursuant to the terms and conditions of this Agreement.

    f. "**Services**" means the services that CoinLab provides to Customer under this Agreement as further described in Section 2.

    g. "**Term**" means 1 years unless the Agreement earlier terminated pursuant to the terms and conditions herein.

    h. "**Wind Down Period**" means the period of time extending 12 months after the Term of the Agreement

2. **Services.** CoinLab will make commercially reasonable efforts to mine _____36231.844057971_____ Bitcoins on Customer's behalf during the Term. CoinLab will promptly deliver to Customer the Bitcoins ordered as they are mined by CoinLab on the condition that Customer acknowledges and agrees that no delivery of Mined Bitcoins is expected to occur before July 1, 2013. After July 1, 2013, CoinLab will deliver to Customer a monthly account of Mined Bitcoins compared with Bitcoins ordered.

CoinLab will deliver to Customer Mined Bitcoins via the CoinLab Storage. Customer may retain Mined Bitcoins in the CoinLab Storage through the Wind Down Period.

3. **Fees.** In exchange for performing the Services, Customer will pay CoinLab a total of $\$\underline{\ 6.9\ }$ USD per Bitcoin, for a total of $\$\underline{\ 250000\ }$ USD ("**Fees**"). Customer will pay CoinLab the Fees within 10 days of the effective date. Each party will bear its own taxes as levied under applicable law.

4. **Termination.** Either party may suspend its performance or terminate this Agreement:

    a. If the other party materially breaches this Agreement (other than the confidentiality obligations in Section 6) and fails to cure that breach within 30 days after receiving notice;

    b. Immediately upon notice if the other party materially breaches the confidentiality obligations in Section 6;

    c. Immediately upon notice if the other party is Insolvent. "***Insolvent***" means: (i) becoming insolvent; (ii) admitting in writing the inability to pay debts as they mature; making a general assignment for the benefit of creditors; (iii) suffering or permitting the appointment of a trustee or receiver for all or any assets (unless such appointment is vacated or dismissed within 60 days after appointment); (iv) filing (or having filed) any petition as a debtor under any provision of the federal Bankruptcy Code or any state law relating to insolvency, unless such petition and all related proceedings are dismissed within 60 days of such filing; being adjudicated insolvent or bankrupt; (v) having wound up or liquidated; or (vi) ceasing to carry on business.

    d. Immediately upon notice in the event that performing the Services becomes impracticable or impossible including, without limitation, in the event that applicable laws or regulations have changed in a way that materially affects the provision of Services under this Agreement in either party's reasonable discretion.

5. **Effects of Termination or Expiration.** Upon expiration or termination of the Agreement, sections that were, by their nature, intended to survive will so survive. Customer will collect all of its Mined Bitcoins from the CoinLab storage by the end of the Wind Down period; if it fails to do so, all rights in and to such Mined Bitcoins will and does revert to CoinLab. In the event that the Agreement expires or terminates before all Mined Bitcoins ordered by Customer have been delivered to Customer, CoinLab will refund to Customer US Dollars by the following formula:
    USD Fee Paid - (Bitcoins Delivered / Bitcoins Ordered) * (USD Fee Paid)

6. **Confidentiality.** Neither party will use the other's Confidential Information except as reasonably required for the performance of this Agreement. Each party will hold in confidence the other's Confidential Information by means that are no less restrictive than those used for its own similar confidential materials and in no case less than

Case 13-19746-KAO    Doc 13-10    Filed 11/15/13    Ent. 11/15/13 16:41:58    Pg. 2 of 4

Vessenes Decl., Ex. J, pg. 2

reasonable care. Each party agrees not to disclose the other party's Confidential Information to anyone other than its employees or subcontractors who are bound by confidentiality obligations and who need to know the same to perform such party's obligations hereunder or who need to know the same for purposes of internal business administration such as the provision of legal or accounting services.

7. **Warranties.** CoinLab warrants that the Services will be performed consistently with industry standards for Bitcoin mining or manufacture. Customer warrants that it will not exchange Bitcoins for any illegal material, illegal services, or contraband under any applicable laws. Customer also warrants that it will be responsible for all necessary government approvals and taxes with regard to the exchange of Bitcoins. Customer will indemnify, defend, and hold harmless CoinLab from any allegation, claim, or litigation proceeding (including all associated costs and attorneys' fees) arising from Customer's breach of this Section, and this indemnity obligation will survive termination or expiration of the Agreement.

8. **Disclaimer of Warranties.** EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, COINLAB DISCLAIMS ALL WARRANTIES, EXPRESS AND IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER UNDERSTANDS AND AGREES THAT THE SERVICES AND BITCOINS ARE THE RESULT OF RELATIVELY NEW TECHNOLOGIES AND MARKET EXCHANGES AND MAY BE SUBJECT TO FUTURE LAWS, REGULATIONS, CHANGES IN TECHNOLOGY, AND OTHER FORCES, NOT WITHIN COINLAB'S CONTROL, AND THAT ANY SUCH CHANGES COULD RENDER THIS AGREEMENT IMPRACTICABLE OR IMPOSSIBLE TO PERFORM. COINLAB MAKES NO WARRANTIES REGARDING THE MONETARY VALUE OR FUTURE EXCHANGE RATES OF BITCOINS. COINLAB MAKES NO WARRANTIES REGARDING THE ABILITY OF PEER-TO-PEER NETWORKS OR OTHER TECHNOLOGIES TO ISSUE BITCOINS OR TO REGULATE, OR OTHERWISE MANAGE THE BITCOIN MARKET. EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT ALL ASSOCIATED RISKS RESIDE WITH CUSTOMER.

9. **Limitation of Liabilities.** TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, SPECIAL, OR EXEMPLARY DAMAGES ARISING OUT OF OR THAT RELATE IN ANY WAY TO THIS AGREEMENT OR ITS PERFORMANCE. THIS EXCLUSION WILL APPLY REGARDLESS OF THE LEGAL THEORY UPON WHICH ANY CLAIM FOR SUCH DAMAGES IS BASED, WHETHER THE PARTIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, WHETHER SUCH DAMAGES WERE REASONABLY FORESEEABLE, OR WHETHER APPLICATION OF THE EXCLUSION CAUSES ANY REMEDY TO FAIL OF ITS ESSENTIAL PURPOSE. THE PARTIES WILL NOT BE LIABLE FOR ANY DIRECT DAMAGES THAT EXCEED THE AMOUNT OF FEES PAID UNDER THIS AGREEMENT. THIS SECTION WILL NOT APPLY TO ANY INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT.

10. **Miscellaneous.**

    a. **Assignment.** This Agreement may not be assigned by either party without the prior written approval of the other party. Notwithstanding the foregoing, CoinLab may assign this Agreement to: (i) a parent or subsidiary; (ii) an acquirer

of all or substantially all of CoinLab assets (or all or substantially all of the CoinLab assets relating to this Agreement); or (iii) a successor by merger or other combination. Any purported assignment in violation of this Section will be void.

b. **Governing Law.** This Agreement will be governed and interpreted in accordance with Seychelles law. Any dispute relating to the terms, interpretation, or performance of this Agreement or the dealing of the parties under this Agreement will be resolved at the request of either party through binding arbitration. Arbitration will be conducted in the city of Seattle Washington under the rules and procedures of the American Arbitration Association ("**AAA**").

c. **Force Majeure.** Neither party will be deemed in default of this Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, accident, act of government, shortages of materials or supplies, internet outages or other cause beyond the control of such party ("**Force Majeure**") provided that such party makes commercially reasonable efforts to promptly notify the other. In the event of such Force Majeure, the time for performance or cure will be extended for a period equal to the duration of the Force Majeure.

d. **Relationship of parties.** The parties are independent contractors and have no authority to act on behalf of or bind the other. This Agreement does not create an employment, agency, or partnership relationship or grant a franchise.

e. **Entire Agreement.** This Agreement states the entire agreement between the parties on the subject and supersedes all prior negotiations, understandings, and agreements between the parties concerning the subject matter. No amendment or modification of this Agreement will be made except by a writing signed by both parties.

f. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original and all of which together will constitute one instrument.

So agreed by the parties:

| CoinLab | [Customer] |
|---|---|
| By: | By: |
| Printed Name: Peter Vessenes | Printed Name: Timothy Draper Living Trust |
| Title: CEO | Title: Trustee |
| Date: 12/20/12 | Date: 12-18-12 |