Hon. Karen A. Overstreet
HEARING ON BIDDING PROCEDURES ORDER:
HEARING DATE: TBD
HEARING TIME: TBD
RESPONSE DUE: TBD

HEARING ON SALE OF ASSETS:
HEARING DATE: TBD
HEARING TIME: TBD .

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In Re: ) Chapter 11
)
CLI HOLDINGS, INC. dba ALYDIAN, ) NO. 13-19746
)
Debtor. ) DECLARATION OF PETER VESSENES
) IN SUPPORT OF MOTION FOR
) BIDDING PROCEDURES ORDER AND
) FOR SALE OF ASSETS UNDER 11
) U.S.C. § 363
)

I, Peter J. Vessenes, make this declaration in support of the Motion for Bidding Procedures and Sale of Assets under 11 U.S.C § 363 which I have approved .

1.  I am the managing director of the debtor, CLI Holdings, Inc. dba Alydian ("Alydian"). I have personal knowledge of these facts stated herein.

2.  Alydian was formed in August 2012 as a corporation organized and existing under the laws of the Republic of Seychelles under the International Business Companies Act. Alydian currently does business in the United States and has an office at 900 Winslow Way East, Suite 100, Bainbridge Island, WA.

DECLARATION OF PETER VESSENES (13-19746) Page - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

N:\CLIENTS\29744\1\PLEADINGS\363.SALE\VESSENES DEC 122313.FINAL.PVVERSION.DOC

Case 13-19746-KAO    Doc 67-2    Filed 12/23/13    Ent. 12/23/13 17:55:12    Pg. 1 of 6

3. Shortly after its incorporation, XRAY Holdings, PLC placed a $500,000 investment in exchange for 35% of the common stock of Alydian. CoinLab, Inc. ("CoinLab"), a Delaware corporation, retained the other 65% of common stock Alydian.

4. CoinLab has functioned as a business incubator, much like the business models of other famous incubators like 500 Startups, Betaworks and Rocket Internet. Incubators typically provide management and operating talent, capital and other resources to incubated companies until the companies are ready to source their own revenue and talent resources.

5. To work together as incubator and "incubatee," pre-petition, CoinLab invoiced Alydian and Alydian reimbursed CoinLab for Alydian's work and work product. The arrangement has not changed: CoinLab charges Alydian for invoiced direct costs incurred, plus an administrative fee of 10% subject to a maximum of $5,000 per invoice. See Operations Agreement attached hereto as Exhibit "A".

6. Some background as to the capital structure of Alydian is relevant. Until approximately February 2013, Alydian sold mining services to customers, raising a total of $745,000. These customer agreements were signed with CLI Holdings, Inc. The agreements were structured to deliver mined Bitcoins, not mining hardware or 'hashes,' a technical term of art referring to mining capacity on the bitcoin mining network. The total Bitcoins pre-purchased through these agreements exceeded 100,000 coins, which at the time was equivalent to approximately $1.2 – $1.5mm. That number of coins would now cost more than $60mm.

7. At that time, it was common business practice to pre-sell mining hardware. Alydian considered that customers might gain better protection from late delivery by denominating their purchases in Bitcoins. This decision created the potential for vast liabilities if

DECLARATION OF PETER VESSENES (13-19746) Page - 2

N:\CLIENTS\29744\1\PLEADINGS\363.SALE\VESSENES DEC 122313.FINAL.PVVERSION.DOC

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Case 13-19746-KAO    Doc 67-2    Filed 12/23/13    Ent. 12/23/13 17:55:12    Pg. 2 of 6

the Bitcoin price increased. The price rose from roughly $12 to over $200 on the petition date, increasing Alydian's possible liabilities.

8. Some early customers had inquired about the Seychelles incorporation and jurisdiction governing the original contracts. To ease their concerns, CoinLab updated its mining services contracts to be with CoinLab, to be governed by Washington State law. The presale contracts included clear assignability language. The intent was to assign them to Alydian at some point in the future.

9. By May or June of 2013, Alydian's capital was depleted. In anticipation of raising another round of financing for Alydian, CoinLab loaned $550,000 to Alydian. By August of 2013, CoinLab was unable to continue financing Alydian and Alydian required substantial additional capital to complete its mining project.

10. Alydian approached Cedar Hill Capital (also known as Crystal Island) and other investors looking for a financing round. Cedar Hill Capital engaged Dan Gallancy ("Gallancy") to perform due diligence for the project. Gallancy was a purchaser of mining services contracts and he claimed to be a Chartered Financial Analyst with a background in the chip industry.

10. Unknown to Alydian at that time, Gallancy also had an expectation with Crystal Island to receive a placement or finder's fee on Crystal Island's investment. Gallancy recommended that Crystal Island proceed. Crystal Island made an offer to loan Alydian 10,000 Bitcoins in exchange for the first 20,000 Bitcoins mined. Alydian had two concerns. The first was that it was possible the project would not return 28,000 coins. In that case, none of the original customers would receive Bitcoins. Although this would also have been the case if Alydian couldn't raise money, Alydian didn't like forcing the entire early customer base down

DECLARATION OF PETER VESSENES (13-19746) Page - 3

N:\CLIENTS\29744\1\PLEADINGS\363.SALE\VESSENES DEC 122313.FINAL.PVVERSION.DOC

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Case 13-19746-KAO    Doc 67-2    Filed 12/23/13    Ent. 12/23/13 17:55:12    Pg. 3 of 6

the creditor chain. The second concern was that the desired rate of return was inappropriately high.

11. Alydian received a significantly better offer from XRAY Holdings ("XRAY") whereby XRAY Holdings ("XRAY") agreed to loan 10,000 Bitcoins to Alydian and to be repaid 15,000 at a later date. The payment schedule was adjusted to make room for other customers, by allowing Alydian to split repayment of coins 10,001 and on between other early customers. In addition, XRAY was willing to place 2,535 Bitcoins as part of an equity-only capital call if CoinLab converted its $550k debt to equity. This was a significantly better offer than Crystal Island was willing to make (for Gallancy and other creditors); they declined to counter, although they did re-iterate their offer; with Gallancy and Crystal Island asking Alydian to take both offers simultaneously. Alydian signed the contract with XRAY contract and moved ahead. At the time Bitcoin prices were approximately $125.

12. CoinLab wished to purchase bitcoins at this time, and so Alydian sold bitcoins to CoinLab in exchange for CoinLab buying parts and paying for labor, rent and hosting.

13. Alydian could have sold the bitcoins to an exchange, and CoinLab could have then purchased bitcoins from an exchange. However, this would have created additional market volatility and also incurred fees of up to 1% total for the parties, so instead the transactions were effected at market rates using a standard formula. All the Bitcoin purchases were documented by date with signed purchase orders and confirmation of moneys due.

14. At the time, Alydian was mining with 33 Terashes ("TH"), and working to pay off its final parts bills. Once the last parts were paid for, it would have been able to begin to deliver coins to contract holders (subject to operational expenses). By October 31, 2013, because the

DECLARATION OF PETER VESSENES (13-19746) Page - 4

N:\CLIENTS\29744\1\PLEADINGS\363.SALE\VESSENES DEC 122313.FINAL.PVVERSION.DOC

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Case 13-19746-KAO    Doc 67-2    Filed 12/23/13    Ent. 12/23/13 17:55:12    Pg. 4 of 6

network difficulty was increasing so rapidly, it was fairly obvious Alydian would never return even 10,000 coins mined.

15. Having conducted a review of Alydian's prospects, it became clear that Alydian's liabilities exceeded its earnings. Alydian filed for Chapter 11 bankruptcy protection on November 1, 2013 to ensure that Alydian's creditors were treated fairly given the insolvency of the company and to consider options for reorganization. Since the petition date, the Bitcoin price has skyrocketed, along with mining difficulty. Alydian has currently deployed about 135 TH, and the Bitcoin network as a whole has deployed approximately 6,000 TH in the same period, the total now standing (as of this writing) at 9,500 TH per second.

16. Because miners must share the results of their work with all other miners, the amount of coins that Alydian can expect to receive will reduce over time as new miners enter the bitcoin mining network. Alydian cannot deliver over 100,000 coins using its mining systems, and that makes the pre-buy contracts impracticable. Alydian cannot mine even 8,000 coins in excess of capital and operating expenses, this makes the XRAY and Bitvestment contracts impracticable.

17. The Bitcoin network mining rate's incredible growth rate in the last six months triggers a provision in all Alydian mining contracts which states that changes in technology or other forces outside Alydian's control may render the contracts impracticable. All prebuyers, including Dalsa Barbour/Bitvestment, assumed the risk arising from changes in "other forces." All parties to the contracts foresaw this change in the market, and there is specific warranty language addressing it in each of the mining contracts.

18. Despite this growth, some Bitcoin miners are bullish on their industry – Bitcoin mining as of time of writing sell for substantial amounts (as much as $41k per TH) on realtime

DECLARATION OF PETER VESSENES (13-19746) Page - 5

N:\Clients\29744\1\Pleadings\363.Sale\Vessenes Dec 122313.FINAL.PVversion.doc

LAW OFFICES OF
**Keller Rohrback l.l.p.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Case 13-19746-KAO    Doc 67-2    Filed 12/23/13    Ent. 12/23/13 17:55:12    Pg. 5 of 6

exchanges like cex.io.  Mining rigs pre-sold for March 2014 delivery might cost only $3k per TH – this is the discount the market places on late delivery of mining rigs.  Because of this pricing dynamic, Alydian believes that the way to maximize the value of the estate was to work to deploy all of Alydian's rigs quickly and sell them.  This dramatic change in the price per TH overtime demonstrates the financial necessity for selling the bitcoin mining rigs quickly.

19. At this writing, Alydian should have enough parts to deliver 36 "Systems", with each system mining about 5.9 TH/second.  Approximately 24 of the Systems have been deployed.  The rest should be deployed in the next two weeks.

20. A sale under 11 U.S.C. § 363 is the best prospect for maximizing the return to all creditors and is the best interests of the estate.  A sale is supported by ample "business justification" and is reasonable and appropriate under the circumstances of this Chapter 11 case.  It is the only viable way to maximize the value of the estate.  A going-concern sale will preserve the substantial goodwill of Debtor's business, maintain valuable Systems and avoid a liquidation sale of the Assets at depressed values.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed in Boston, Massachusetts this 23rd day of December 2013.

/s/ *Peter J. Vessenes*
Peter J. Vessenes

DECLARATION OF PETER VESSENES (13-19746) Page - 6

N:\CLIENTS\29744\1\PLEADINGS\363.SALE\VESSENES DEC 122313.FINAL.PVVERSION.DOC

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Case 13-19746-KAO    Doc 67-2    Filed 12/23/13    Ent. 12/23/13 17:55:12    Pg. 6 of 6