Charles R. Ekberg
Tereza Simonyan
Lane Powell PC
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
(206) 223-7000
(206) 223-7107 Facsimile
Attorneys for Bitvestment Partners
 LLC f/k/a Dalsa Barbour LLC

The Honorable Karen A. Overstreet
Chapter 11
Hearing Date: January 10, 2014
Response Date: Date of Hearing

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In Re )
)
CLI HOLDINGS, INC. dba ALYDIAN, ) CASE NO. 13-19746-KAO
)
Debtor. ) OBJECTION TO MOTION TO
) APPROVE AUCTION SALE AND
) BIDDING PROCEDURES
)

Creditor Bitvestment Partners LLC f/k/a Dalsa Barbour LLC ("Bitvestment") objects as follows to the Debtor's Motion for Order Approving Notice of Sale, Bidding Procedures Order, and Setting Hearing on Sale of Assets and Granting Other Relief (the "Motion"). (Dkt. #67.) This Objection is supported by the Declaration of Tereza Simonyan ("Simonyan Decl."), and the papers and pleadings filed in this case.

**I. BACKGROUND**

Bitvestment entered into an Amended and Restated Bitcoin Services Agreement (the "Agreement") with Debtor and CoinLab, Inc. ("CoinLab"), which owns a 65% equity stake in the Debtor. SOFA, §21. (Dkt. No. 11). Pursuant to the Agreement, the Debtor and CoinLab were obligated to mine 7,984.006735 Bitcoins and were further obligated to deliver 100% of their mining output to Bitvestment until the terms of the Agreement were met. (Dkt. #13, Exhibit F).

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 1 of 12

In late-October 2013, Bitvestment sued CoinLab and the Debtor in the Southern District of New York seeking, among other things, CoinLab's and Debtor's specific performance of the Agreement. In an effort to thwart such litigation, and in a not-so-thinly veiled effort to keep all of its mined Bitcoins for its own benefit and for the benefit of insiders such as CoinLab and Peter Vessenes (who is managing director of Debtor and CEO and only board member of CoinLab), among others, Debtor filed this Chapter 11 bankruptcy case on November 1, 2013 (the "Petition Date").

In the short two months since filing, Debtor has repeatedly abused the bankruptcy process, wielding its protections as a sword, instead of a shield, to benefit non-Debtor insiders and affiliates. For example, Debtor failed to disclose in its schedules that **two days before and the day of the Petition filing** the Debtor transferred approximately 15,100 Bitcoins (equivalent to $12 million at today's value) to an insider, leaving only 25 mined Bitcoins in the Debtor's estate on the date of filing.[1] The plundering of the Estate in the form of unauthorized post-petition transfers apparently continues to this date. Mr. Vessenes, has made the unilateral decision to make numerous post-petition transfers from the Debtor to CoinLab, and has awarded itself a monthly salary of $20,000, finding it unnecessary to consult his attorney or seek Court approval for doing so. Simonyan Decl., **Exhibit A**.

Debtor has also grossly under-reported (by a factor of 15) the value of Bitcoins in its monthly financial report, which it adjusted upwards to $1.8 million only a day after being confronted with evidence to the contrary during the Rule 2004 Exam. Moreover, despite the Debtor's numerous complaints about its financial viability, the Debtor has run a tremendously successful operation since the Petition filing - netting total revenue of nearly $1.6 million in November and $1.8 million in December – all through the mining of Bitcoins.

---

[1] This information came to light only after the Court ordered Debtor to appear on January 7, 2014, for a 2004 examination. Having been confronted with evidence of these improper transfers during its 2004 Exam, Debtor subsequently attempted to reload the smoking gun by filing an amendment to its schedules on January 8, 2014, to reflect the transfers.

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 2

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 2 of 12

(Dkt. Nos. 58, 96).

Despite, or perhaps because of, that profitability the Debtor now is attempting to shirk its contractual responsibilities to all the various investor-creditors by seeking to sell its revenue-generating equipment, its Bitcoin mining rigs, most likely to an insider so it can continue the Debtor's operations as a different entity, unencumbered by obligations to the Debtor's investor-creditors. Viewed through the prism of Debtor's conduct in the first 65 days of this case, in which it has attempted to make a mockery of the bankruptcy process with false representations, pre-petition transfers to insiders, post-petition transfers to insiders, Debtor's motion should be denied. Even if the Debtor's financial picture and behavior in this process were different, the Debtor's proposed sale procedures are grossly flawed to favor insiders and make not even the slightest effort to maximize creditor returns. As currently configured, the Debtor's sale procedures incentivize the Debtor or its insiders to cut and run with the mining rigs only to set up shop elsewhere in a different guise free of its obligations to creditors.

For the reasons set forth below, the Debtor's motion should be denied.

## II. DISCUSSION

11 U.S.C. §363(b)(1) provides for the use, sale or lease of property of the estate, other than in the ordinary course of business, after notice and a hearing. Courts generally require a "business justification" for a sale of all or substantially all of the property of the estate. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986). In determining whether a sale is appropriate, the court should determine whether the debtor-in-possession's judgment is reasonable and whether a sound business justification exists supporting the sale and its terms. Collier on Bankruptcy, ¶363.02[4] (16th ed. 2011). In addition, the proponent of the sale must demonstrate that the sale is supported by a sound business reason, there has been adequate and reasonable notice, and that the sale has been proposed in good faith. *L.E. Myers Co. v. Harbor Ins. Co.*, 67 Ill.App.3d 496, 384 N.E.2d 1340 (1978). Here, the Debtor

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 3

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 3 of 12

has failed to satisfy any of the elements justifying a §363 sale of substantially all of its assets.

### A. Debtor is Profitable and the Motion is Financially Disadvantageous to the Estate and the Creditors

The Debtor has failed to provide any legitimate reasons or sound business judgment to sell the mining rigs, let alone in such an expedited manner. In fact, selling the mining rigs at this time is senseless. Despite its best efforts to conceal and obscure its true financial situation and groundless assertions regarding its dire financial straits, the Debtor is a profitable company that has mined approximately 4,900 Bitcoins since the Petition Date, for a current market value of approximately $4 million.

Even the incomplete disclosures that Debtor has made demonstrate the Debtor's significant profitability. In November alone, the Debtor mined approximately 1,650 Bitcoins, for a current market value of approximately $1.9 million. (Dkt. No. 96). The Debtor's operating expenses for November totaled $333,250[2], for a **net profit of approximately $1.6 million for the month of November**. (Schedule I and J). December proved to be an even more profitable month, with the Debtor mining approximately 2,500 Bitcoins, at a current market value of $2.5 million, $400,000 in operating expenses, resulting in a **net profit of approximately 1.9 million for the month of December**. Simonyan Decl., **Exhibit B**. As of the date of the hearing on the Debtor's Motion (January 10, 2014), the Debtor will have mined approximately 700 Bitcoins for a total of $600,000. In other words, the Debtor generates far more value during a mere week of operations than the total proceeds of $400,000 that would be generated from the sale of the rigs pursuant to the Debtor's proposed sale procedures. Even if the rate at which the Debtor mines Bitcoins decreases during the course of 2014, as the Debtor contends, the anticipated continued net revenue far exceeds the purported expected depreciation in the value of the mining rigs.

---

[2] Bitvestment reserves the right to challenge the validity and adequacy of the Debtor's monthly operating budget.

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 4

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 4 of 12

The Debtor has raised a dubious and highly questionable concern about its core team's willingness to "remain on" after January 31, 2014. "Because Alydian's core team has stated they *likely* do not wish to remain on after January 31, 2014…."[3] Mr. Vessenes's testimony revealed that the Debtor's "core team" consists of three individuals, Hans Olson, Bobby Seidensticker and Robert Batten, all three of whom are CoinLab employees/contractors reporting directly to Mr. Vessenes. Simonyan Decl., **Exhibit C**.

Apparently, the trio has "threatened" to leave the company unless paid a retention bonus in the amount of $250,000 on top of their yearly salary of approximately $200,000. Simonyan Decl., **Exhibit D**. What makes this purported demand most disconcerting is the fact that just last month the trio apparently already received a retention bonus in the amount of $105,000. Simonyan Decl., **Exhibit E**. While Mr. Vessenes's self-serving testimony unsupported by any evidence is highly questionable and warrants further discovery, assuming *arguendo* the retention bonus demand and the purported reasons for the threatened departure were true, the Debtor's high profit margins would justify the payment of the retention bonus demand. The Debtor's concerns regarding its team's continued commitment to the Debtor appears to be a conjured pretext for the sale of the mining rigs, and should be disregarded pending further discovery.

Because the Debtor has failed to provide a legitimate justification for the sale of the mining rigs as opposed to continued operations, much less on an expedited schedule, the Motion should be denied, and the Debtor should be ordered to continue its Bitcoin mining operation to maximize the value of the Estate, until and unless otherwise ordered by the Court at a future date. In addition, while Bitvestment is cognizant that before the Court is a motion for approval of sale procedures and not a motion for approval of the sale, because the sale of the Debtor's assets should not be approved under *any procedures*, this first step of the process should also be denied.

---

[3] Supplemental Declaration of Peter Vessenes, Dkt. No. 92.

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 5

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 5 of 12

### B. Debtor Has Failed Repeatedly, Despite Court Orders, to Provide Truthful, Accurate and Complete Information About its Financial Situation

The Court cannot make an informed ruling on a substantive motion affecting the rights of creditors because the Debtor has and continues to loot the Estate and, in an effort to conceal such conduct, has repeatedly made false statements to the Court, provided false testimony to the US Trustee, and evaded production of basic financial information and documents despite various Court orders.

On December 30, 2013, the Court entered an Order granting Bitvestment's Motion to Compel Discovery ("Order Compelling Discovery"), and requiring the Debtor to produce, within 24 hours of entry of the Order, "[a] list of all addresses that Debtor utilizes or has previously utilized to mine, receive, transfer, store, hold, and otherwise control Bitcoins…." (Dkt. No. 85). In response, the Debtor produced a 27-page document that did not contain a single full Bitcoin address. Simonyan Decl., **Exhibit F-G**[4]. Mr. Vessenes subsequently testified at his Rule 2004 exam that the Debtor did not intend the 27-page document to be responsive to Bitvestment's RFP # 1 as per the Order Compelling Discovery. Simonyan Decl., **Exhibit H**. The Debtor's 27-page production also contained an unnecessary and obnoxious watermark obscuring the content of the document when copied or scanned. After being notified of the failure to comply with the Order Compelling Discovery and given a clarification regarding the expected production under the Order ("only addresses that were in fact utilized for mining, transactions, transfers, storage, etc.") (Simonyan Decl., **Exhibit I**), at 6:00 p.m. the evening before the Debtor's scheduled Rule 2004 Exam, the Debtor produced a 1,250-page, double-sided document containing over 100,000 Bitcoin addresses, all but (apparently) six of which were addresses specifically excluded from Bitvestment's

---

[4] Exhibit G is purposely omitted from filing in compliance with the Confidentiality Agreement attached to Order Compelling Discovery. A hard copy of Exhibit G will be available with Bitvestment's counsel at the time of hearing.

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND BIDDING PROCEDURES - 6

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

production request[5]. Simonyan Decl., **Exhibit J**. Even during the Rule 2004 Exam, the Debtor was not able to identify with certainty the number of addresses and the full title of the addresses utilized by the Debtor (Simonyan Decl., **Exhibit K**), thereby leaving open the possibility to disclose more addresses if confronted with evidence contradicting his earlier testimony.

The reason for the lengths that the Debtor has gone to conceal the Debtor's Bitcoin addresses became abundantly clear during the Rule 2004 exam. Faced with the transaction history in the addresses the Debtor had adamantly refused to produce, the Debtor admitted that the information on SOFA #3, listing the Debtor's prepetition transfers to an insider was inaccurate.[6] Mr. Vessenes's testimony revealed that, contrary to the transfer history on SOFA #3, **the Debtor in fact transferred to CoinLab approximately 15,100 Bitcoins, the equivalent of $12 million, two days before and on the Petition Date**. The Debtor failed to provide any explanation for the depletion of the Estate of all but 25 mined Bitcoins immediately prior to the Petition Date.

The looting of the Debtor's Estate continues to this day in the form of unauthorized transfers of Bitcoins to insiders. Mr. Vessenes testified that he made the unilateral decision to make various post-petition transfers from the Debtor to CoinLab, finding it unnecessary to either consult his attorney or obtain Court approval for doing so. Simonyan Decl., **Exhibit A**. It is important to note the fact that when questioned about the unauthorized post-petition transfers out of the Estate, Debtor's counsel *incorrectly* assured Bitvestment that transfers out of the estate were to Debtor-controlled addresses only. Simonyan Decl., **Exhibit L**. Debtor has also executed a post-petition Operating Agreement with CoinLab whereby it agrees to pay vast sums to an insider without authority from the Court. Simonyan Decl., **Exhibit M**.

---

[5] Debtor's 1,250-page production included 100,000+ addresses that were generated but never used by the Debtor and did not adequately respond to Bitvestment's RFP#1.

[6] SOFA #3 was amended the day after the Rule 2004 exam disclosing the 15,100 Bitcoin transfer on the day of and two day before the filing of the Bankruptcy Petition. (Dkt. No. 95).

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND BIDDING PROCEDURES - 7

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 7 of 12

The Operating Agreement is signed by Mr. Vessenes on behalf of the Debtor as well as CoinLab. *Id.*

Mr. Vessenes also testified regarding the inaccuracy of the information in the monthly financial report wherein it scheduled the value of Bitcoins mined in the month of November was $129,168, as opposed to $1.89 million as corrected in a subsequently filed amendment. (Dkt. Nos. 58, 96).

The Debtor's continued failure to abide by Court orders and the basic requirements of the Bankruptcy Code for truthful, accurate disclosures has deprived creditors and this Court of complete and meaningful information about the true financial situation of this Debtor and casts a pall over any representations it makes concerning the "need" for an expedited auction process to sell its sole revenue-generating assets. Based on the above, it is apparent that Mr. Vessenes cannot be expected to act in accordance with his fiduciary duties to the Debtor as its managing director, or make good faith and sound business decisions regarding the sale of the Debtor's assets in furtherance of creditor interests as a debtor-in-possession. For that reason alone, the Motion should be denied.

C. **The Expedited Motion Procedures Are Flawed and Warrant Denial of the Motion.**

Debtor's Expedited Motion sets up a number of procedures that will do nothing to maximize the return to creditors and seem only designed to further a scheme or plan to divert the only revenue-generating assets of the Debtor's estate to insiders who can operate the mining rigs elsewhere without the disruption of bothersome creditors who expect to share with the Debtor the benefits of their investment in a highly profitable venture. The Debtor's proposal does not allow for adequate time to market the Debtor's assets or for prospective outside purchasers to engage in due diligence and learn how they could make a rational business decision in purchasing the mining rigs. An insider, therefore, is likely the only bidder with adequate knowledge of the assets that could and of course would, make a bid.

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 8

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 8 of 12

Without necessary information available to outside prospective bidders, competitive bidding will be eliminated or at the very least significantly chilled, thereby increasing the likelihood that an insider will acquire the assets at a below-market price.

1. <u>Purchase process favors an insider</u>: Given the specific and unique nature of the individually engineered and deployed mining rigs, the procedures, and specifically the timeframe, that the Debtor's Motion sets up make it more than likely that only an insider would purchase the mining rigs. At this early stage in the case, with no marketing to outsiders, with no plan in place to assist an outsider with the equipment if such an outsider did in fact desire to make a bid, an insider is virtually the only option to be a purchaser. Given the various questionable and unexplained insider transactions to date, there is little doubt the bidder(s), will only consist of persons and entities related to CoinLab and Mr. Vessenes. In fact, the only party identified with certainty by Mr. Vessenes during his Rule 2004 examination as a "potential buyer [of the mining rigs] within the bankruptcy" was Joel Yarmon, a Debtor insiders and former CoinLab board members. Interestingly, despite the recent nature and importance of his conversation with Mr. Yarmon regarding the potential purchase of substantially all of the assets of the Debtor, Mr. Vessenes was unable to recall any details of such discussions. Simonyan Decl., **Exhibit N**.

2. <u>Inadequate time for due diligence by outside purchasers</u>: The Debtor's proposed bidding procedures contemplate a deadline to submit bids within a mere five (5) days following the entry of the order on the Motion[7]. The five days represent, in Debtor's view, sufficient time for the Debtor to send out notice of the Court order outlining the bid procedures, market the mining rigs, and for potential arm's length purchasers to conduct due diligence, determine an appropriate bid amount and submit a qualified bid. This compressed timeframe is entirely unrealistic, prohibitive of competitive bidding and clearly exposes the

---

[7] The Debtor's Motion was accompanied by a Motion seeking a shortened time hearing of January 3, 2014 (Dkt. No. 66), with the Motion setting a bid deadline of January 8, 2014.

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 9

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 9 of 12

Debtor's scheme to sell the rigs to an insider. Analyzing the assets of a Bitcoin mining company for acquisition purposes, one that is purportedly struggling, requires far more than a mere five business days.

3. <u>Inadequate procedures for due diligence by outside purchasers</u>: The Debtor's proposed bidding scheme also fails to identify any process through which prospective purchasers can obtain information upon which to make a bid. By compressing the available time to make a bid to less than a week, one would expect the Debtor to articulate a method to expedite the exchange of due diligence information. Absent a process identified in advance, it is doubtful that meaningful due diligence could be conducted by a non-insider purchaser under the timeframe proposed by the Debtor and the Motion.

The purported reason for this rush is, of course, overstated and just plain wrong. Assuming *arguendo* that the Debtor were to mine for the upcoming six months, and such mining rigs were valueless at the conclusion thereof – which Bitvestment submits would not be the case – the Debtor still would have obtained for the estate far greater value in the form of thousands of Bitcoins than it would by an expeditious sale of its mining rigs.

4. <u>Inadequate marketing</u>: The Debtor has offered nothing to support any conclusion that it has or intends to adequately market its assets, and in fact, Mr. Vessenes has testified that other than discussions with Debtor's insiders, the Debtor has made no efforts to market rigs to date. Simonyan Decl., **Exhibit O**. Given that the Debtor has set the minimum bid at $2,000 per Terrahash, and that the only realistic purchaser of the mining rigs are the insiders or an outsider with the assistance of an insider, parties in interest are entitled to some evidence that the Debtor is trying to obtain the best possible price for the assets. The proposed auction should not be allowed to proceed without some minimum requirements imposed on the Debtor to market its assets or evidence that the Debtor has made adequate marketing efforts in pursuit of the highest possible purchase offers for its assets.

5. <u>Minimum bid is inadequate consideration</u>: The Debtor has set the minimum bid at

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 10

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 10 of 12

$2,000 per terrahash, with 200 terrashashes available, for a total minimum bid of $400,000. *See* Motion. The adequacy and reasonableness of the minimum bid is unsupported by any evidence for the assets to be sold. The Debtor's own bankruptcy schedules reflect that the Debtor's personal property (i.e., the mining rigs) is worth $1.6 million without consideration of any Bitcoins held by the estate. *See* Schedule B (Dkt. No. 11.) Mr. Vessenes's supplemental declaration filed in support of the Motion states that "as of [January 6, 2014] the spot market price would yield only $6.2 million." (Dkt. No. 92). Despite its own testimony and disclosures evidencing a much higher market value for the mining rigs, the Debtor has proposed to fix the minimum bid for the assets at a mere $400,000. The apparent intent to sell the mining rigs to an insider is the only logical explanation for the Debtor's eagerness to sell its substantial revenue-producing assets on an expedited basis for a radically below-market price.

6. <u>No metric for determining winning bids</u>: The Debtor proposes to select the winning bidder "as reasonably determined by Alydian." Motion *at* 7. Certainly the Debtor must employ its reasonable business judgment, however, prospective bidders should have more certainty as to the metrics that will guide the Debtor's reasonable business judgment, especially given the Debtor's past inability to accompany its "business judgment" with simple logic and arithmetic. For example, how will non-cash terms in an offer or bids expressed in Bitcoins affect the determination of the winning bid? Prospective bidders should have the benefit of this information prior to submitting bids.

### III. RELIEF REQUESTED

For the foregoing reasons, Bitvestment respectfully requests that the Court: 1) deny the Debtor's Motion; 2) order the Debtor to continue its Bitcoin mining operations until and unless the Court enters an order at a future date directing otherwise; 3) award monetary sanctions for Debtor's failure to comply with Court's Order Authorizing Rule 2004 Examination and Compelling Discovery in the amount of fees incurred by Bitvestment in

OBJECTION TO MOTION TO APPROVE AUCTION SALE AND
BIDDING PROCEDURES - 11

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO    Doc 100    Filed 01/09/14    Ent. 01/09/14 16:57:12    Pg. 11 of 12

bringing its discovery motions; and 4) grant such other relief as the Court finds just and equitable.

DATED this 9th day of January, 2014.

LANE POWELL PC

By /s/ *Tereza Simonyan*
    Charles R. Ekberg, WSBA No. 342
    Tereza Simonyan, WSBA No. 41741
Attorneys for Bitvestment Partners LLC,
f/k/a Dalsa Barbour LLC

REYHANI NEMIROVSKY LLP

By: */s/ Bryan Reyhani*
    Bryan Reyhani, B.R. - 9147*
    *Admitted pro hac vice
200 Park Ave., 17th Fl.
New York, NY 10166
Telephone: (12)897-4022
E-mail: bryan@rnlawfirm.com
Attorneys for Bitvestment Partners LLC,
f/k/a Dalsa Barbour LLC

BIDDING PROCEDURES - 12

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 13-19746-KAO   Doc 100   Filed 01/09/14   Ent. 01/09/14 16:57:12   Pg. 12 of 12